May it please the Court, the Court of Federal Claims held that REV didn't have standings challenging bidders ahead of it in line, even though it and one other company had the next most highly rated proposals, and this misunderstanding of the interested party standard presents important legal question. It should be reversed for at least three reasons. First, the Court of Federal Claims was relying on inopposite cases that were about untimely proposals or proposals that were technically unacceptable on the merits. Here REV was rated as good, acceptable, low risk across the board. Second, the VA never said that REV's technical rating is going to disqualify it decision was a relative decision in which it was looking at the comparative strengths to find the most highly rated proposals, and so if the challenges succeed in knocking out a number of people ahead in line, that's going to change that analysis. And then third, the Court of Federal Claims was applying, recited the correct standard earlier in its opinion, but when it actually came to apply that standard, it was applying a heightened standard, not the substantial chance standard, and it was looking at each of these errors in isolation, rather than their cumulative effect. So on the issue of why isn't it just complete speculation that had you succeeded in knocking out even up to six of those offers that were ahead of you, that the VA would ever have redrawn the line which they set after the second stage test at good, that they would have lowered it to acceptable or some other place. Isn't that just utter speculation? No, it's not. I mean, the original solicitation said a rating no less than acceptable must be achieved. The definition of acceptable here was one that, quote, meets all of the government's requirements. And it's very important to understand here that this isn't a situation where there's just one contract to give. This is an on-ramp where they're looking for multiple service-disabled, veteran-owned small businesses for a $22 billion contracting vehicle. There's a lot of work to go around, and where they're up against the statutory standard of 8127D and the Kingdomware decision by the Supreme Court where, when possible, they have to be setting aside those task orders for service-disabled, veteran-owned small businesses. So they need to be bringing people on board here. And in that context, if we're knocking out six people ahead in line and they're only bringing on board three, I think there's every reason to think that is going to be too low of a number. They would look at the people who are going to be next in line. Okay, but maybe you're right, maybe you're wrong. They said they were looking for seven. They said we reserved the right to change the number pretty much at any time from seven. They did change it to nine. How do we know that they wouldn't have been perfectly satisfied with three? I understand why maybe they wouldn't have been. You've got good reasons, but do we have any evidence, or are we knocking out six? Well, this question, when Congress liberalized the standard in 1996 and said an interested party could challenge it, this is always going to be a counterfactual. But I respectfully submit that the list I just submitted, this is not the mere speculation or impossibility. We're just looking at whether it's not an insubstantial chance that we would move forward. We know that we in one other proposal were the next most highly rated. This is the sort of quintessential decision where you're next in line. Drawing the line at good didn't happen until the very end. They go through the entire procurement saying acceptable, acceptable, acceptable. Then when they go to do that, they don't say acceptable is terrible, we don't think you're going to be able to perform. They say people with that rating, quote, were not as strong when compared to the other offers. They talk about considering all the factors and sub-factors and looking at the most highly rated proposals. They are sort of doing relative ranking, but that's relative ranking. Hold on, the comparisons were made, the evaluations were made independent of one another, correct? They looked at the 33 at the second stage. They didn't say number 50 isn't quite as good as number 49. They just looked at number 50 and said, here's your score, acceptable. It was only after they did the 33 independent evaluations that they then lined them up. Isn't that right? Right. They give everyone their score. You do have, you know, we have a good on one of the received an award, got an acceptable on one of the sub-factors, and only an acceptable on the management sub-factor, and moves forward. But yes, that initial ranking is done individually. So it's fair in that context to say this is a relative rating as opposed to 33 independent non-relative ratings that we then put, you know, we wanted to see how everybody played out in order after we did our 33 independent evaluations. Right, but the relative... They put everybody in order, but then the decision of where are we drawing the line here? They don't come into that decision saying that this is going to be a disqualifying rating. They've been saying the exact opposite the entire time. They already eliminated the people who are unacceptable. And again, the definition of acceptable is someone who meets all the government's requirements. Instead, they then line everybody up at that point, do this comparison to say, okay, who's on top? And having done that, they get their nine and say, okay, well, then we can draw the line at this acceptable rating and eliminate. So I urge you, you look at the way the decision's being made. This is 9060 through 9062 of the appendix. It's this relative ranking. And so rerun that in your mind. The words you're using, are they conveying the same thing as or different from saying that the setting of the second competitive range floor depended on the VA seeing that if it did that, it would get a ample number of contractors? Right. I think that's exactly how it's playing out in that decision. It sees that it has nine and then says, okay, so we can draw the line here. And this is against the background of having had an earlier line and you have some other evidence to kind of to add to that. If that's the right characterization, I'm trying to figure out, is that something that we can decide? Is that a fact question that the CFC needed to decide, but didn't decide? Can it be decided on the administrative record? Or I'm trying to figure out, I think I understand the theory, but I'm trying to figure out who is supposed to do what. I mean, I think in an ideal world, the CFC would have decided that and it didn't because I think it's applying the wrong legal standard. But in the context of this court's de novo review on this threshold question, that's something you can decide. All we're asking is to get back and get to the merits of our challenges. And so to do that, you assume success on the merits. You assume six of the people ahead in line are going to be the determinations it's making and think, is there a substantial chance? We don't have to prove any sort of certainty. We don't even have to prove more likely than not. It's just that the court's flipped it around and says it's not insubstantial that we would have moved forward. The other thing, just to highlight, you'll see in that same decision is Rev and the one other offeror being singled out. So there's everybody who doesn't make the cut, but two are treated by the VA itself as in a class of our own above everybody else who makes the cut. They recognize that these are the ones that received a good rating on one of the sub factors and a good rating on the management factor, which couldn't be said about everybody else who was eliminated. So you take that to mean that if the VA was to reconsider who's on the rack, your company would be on the rack at that point? Absolutely. And this is, you know, it will play out in multiple stages. We got knocked out at the threshold here. But isn't this speculative? No, I mean, this is, as I said, it's always... The VA doesn't have to say, OK, well, two dropped out, next two on the rack. They don't have to say that. They don't have to, but in the context here, I mean, where you have multiple awards to be given, these awards are primarily just an opportunity to compete for the individual task force, right? This is the on-ramping. And then for any individual task order, if our proposal isn't good enough, they don't have to be awarding it to us. And so in that context, against the backdrop of Kingdomware, where they need to be on-ramping these service-disabled, better-known small businesses, they'd already, by the time they're making this decision, lost half that were on the procurement vehicle. It's really all you can... I mean, I can't think of where, if anybody's ever going to meet this standard, you could have clearer facts than being next in line with the multiple awards like this against the backdrop of that agency needs to do it. And one thing I'll just point out, I can't recite it in open court because part of the record is sealed, but Appendix 15-647 talks about the agency's need to add more of the service-disabled, better-known small businesses. Quick come back. I think this is what you were talking to Judge Gerardo about, but if we were to say you have standing and we send it back, would you then have to prove not just that those six ahead of you would be disqualified for the reasons you set out, but also that the VA, having had to disqualify those six, would draw the line somewhere else? Would that be part of your burden on the merits? We'd have to... It comes back to the substantial chance standard, comes back at the threshold. You assume success on the merits and then apply the substantial chance standards. That's your standing. Are we an interested party? Then it proceeds to the merits. Then assessing how many of those challenges succeeded, right? It may be more difficult for us if we succeed on how many. Even if you knock all six out, you still have to prove further that that would make a difference. Then the substantial chance standard gets applied again in the prejudice analysis at the end. It's not any sort of certainty. These are counterfactuals. You can't expect that much about people. Do you have to make that proof or does the VA have to do a new comparative analysis? We, in the first instance, have to prove the substantial chance prejudice. So the court's not making a decision. It's not dictating the decision that the agency has to make. It's just deciding there is enough here for us to succeed. And if that happens, it will then rule, okay, these were the errors that were made. And then it goes back to the agency and they can proceed from there with further... This is, I guess, getting back to the procedural aspect of the question that we've just been talking about and that we talked about a few minutes ago. Does everybody here agree, and agree for all time in this case, that the record on which these questions will be decided is complete, is not to be reopened? These questions about whether there was a substantial chance, I can imagine, you know, contract decision-maker testimony on that. Is that off the table, that possibility, or what? I think it generally gets decided on the administrative record which the government compiled itself and sort of gave us. Does it have to be decided on the administrative record? I mean, I think that at that point, there could be a motion to supplement the administrative record, to preside. With testimonial evidence, even? Right. And is that door closed, or is that still a possibility in this case, if we should reopen? I mean, I think that's theoretically a possibility, and then the Court of Federal Claims would just have to decide. It would exercise its discretion and decide, well, is it too late for you to be doing this? Or do I want to just decide these issues and then you can effectively do that final laying when it's on remand to you? But what's so critical... When it's on remand to the agency. Yes. What's so critical about this is this threshold legal ruling that the person who's next in line is not even an interested party to challenge it has major implications for going forward for people's ability to challenge that. And that's the legal issue before this Court, that we're asking you to decide. I'll just ask, the Court of Federal Claims relied on one of its own presidents, Wisconsin Physician. Did they at least apply their own case law, correct? And have we ever adopted that? You have not adopted it, and no, they misapplied their own case law. So Wisconsin Physician was about a technically unacceptable proposal. A proposal that was never going to succeed. And in that case, what did it cite? It cited this Court's decision in Labatt, which was about an untimely proposal. One that came in two days late. But I guess I'm not clear on it. I know you're out of time, but I'm not clear on why, if the VA has discretion to draw the line, which I think they reserve to themselves to draw the line at any point. They decided after seeing how things played out to draw it at good. That effectively made your acceptable rating all but the same thing as a technically unacceptable or untimely. It was no longer above the minimum threshold criteria that the agency wanted to move forward with. Well, then one other way to think of it is temporally, which is the decision below is taking this and saying, once you're out, you can't challenge the subsequent events. But we're really challenging what knocked us out, right? The decision of where to draw that line isn't independent of how many people are left and what they're rated. It would be very different if they came in from the beginning or even sort of before this analysis and said, we are redrawing the line here. This is the new bottom floor. But what they instead are doing is looking at it, saying these are our nine. We look at a bunch of different factors. We decide we have enough. And then they articulate that as, OK, so we'll draw the line at good. They never then say in that decision, you are technically unacceptable in the sense that it's meant by Wisconsin. So if they had said only good and above before seeing how many fell above good, then you'd have no case? Yeah, that would have been a separate legal question about the terms of the original solicitation. But they would have substantial discretion to do that. We're not trying to interfere with that discretion. We're just trying to make sure that a party who's next in line isn't just shut off from being heard on the merits in a case like this where the decision about where to draw the line is not independent of where their assessment is and how many people are above good. I think we used up all your time. We'll restore you to three minutes. Thank you. Mr. Singley, is that correct? Yes, sir. Thank you, Your Honor. May it please the Court. The bottom line in this case is that there is nothing in the record that indicates the agency would have accepted anything less than a good technical proposal. REV did not have a good technical proposal. It no longer challenges the technical rating that it received. So it cannot demonstrate prejudice. The technical rating was by far the most important evaluation factor that the agency was considering. Can I just ask you, suppose the document in which the agency announced these, am I right in describing it as a second competitive range floor? Yes, Your Honor. Had said, we see in our results that we have an ample number of bidders that succeed under a particular standard. We're going to set the standard to have those and no others at that floor. If we didn't have the nine that we have, then we would not do that. We would not change our floor standard, but we happily have enough. Your Honor, I'm glad you're asking that question because I think that would help them, but that is definitely not what happened here. But then the question is how to read that document against the background of the history that started with a lower floor, got raised in a program where they're trying to satisfy certain preference standards, where they're putting people essentially in a potential future contract bidding pool. All the things that Mr. Saunders lays out as pointing in a direction that says when the second competitive range floor was set, it was set dependent on having this ample number. And if there are challenges that would reduce that number to a third, that sounds like, well, what? And it sounds like there's a substantial chance that floor wouldn't have been set there. There are a couple of problems with the argument, Your Honor. I need to talk about the standing piece of it, but I'm going to do that after I make the first point, which is that if you are going to look at the background of the solicitation and everything that the agency articulated as it was explaining what it cared about, it made very clear throughout the solicitation that what it cared the most about was the technical proposal, that it wanted the best quality offers. And the competitive range determination does not anywhere, once they make that second competitive range determination, that's at appendix 9061, they don't talk about whether they had a minimum number of awardees that they were looking for. All they talk about is the quality of the technical ratings because that was the evaluation factor that they cared the most about. This was a competitive range determination, and the contracting officer has very broad discretion in deciding how to draw the line and can draw the line for a whole number of different reasons, including just the efficiency of the procurement process itself. We talk about, in our case, we cite the KSC boss case. It talks about there being a natural breaking point between the highest rated proposals and everyone else. If you look at the competitive range determination at 9060, there's a chart that shows what the agency was looking at. The first column of that chart is the technical rating, which was by far, again, the most important thing that the agency cared about. What the agency cares about is having the highest quality offerors, okay? And there's a clear, and they didn't, this is the other thing, they never ranked these offerors. They keep, REV keeps referring to itself as the 10th or the 11th ranked offeror. The VA never ranked them. What the VA did was it looked at 33 offerors, and in that first column of that chart, 24 of those offerors have A's. Nine of them have goods or outstanding. What the VA did, it didn't say, nowhere says that REV was in a class of its own. What it says is that REV is more similar to the 24 acceptables than it is to the more highly rated offerors. So that's the decision that the agency made, and every indication in the record is that that's what the agency is going to, where the agency is going to draw the line no matter what, especially when you consider the fact that the agency explicitly said in the solicitation, we reserve the right to award fewer than seven for any reason to make sure that the government receives the best value, which is what the government's seeking. I also just need to point out that the competitive range determination is important also because it allows the agency to enter into discussions. They talk about this determination as if it happened at the very end. It didn't happen at the very end. REV was, the award happened at the very end. In between the competitive range determination and the award, the agency enters into discussions and can address minor errors and inconsistencies like the errors that they're trying to allege here. I'm sorry, the discussions were only with those who were above the new floor, not with REV. Correct, Your Honor. And in fact, it was a little confusing because their initial brief didn't mention the CTA, but they talk about the CTA certification requirement. I think it's important to note that those certification requirements make up four of the allegations that they have here. To get down to three, which we say would have been sufficient anyway because the agency cared the most about having a highly rated technical proposal, but to get down to three, they had to knock out four by raising a certification issue that there's no support for the argument they're making in the language of the solicitation, the plain language of the solicitation. Go ahead. I just ask you, so I mean, Mr. Saunders has a number of reasons that tend to support the idea that there was a real possibility that the agency might not have raised the floor if there hadn't been nine above the floor. You're saying, well, there's other, something pointing in the other direction, which is your characterization of the VA saying the thing we care the most about is the technical qualification, and even if we had three rather than nine above this floor, we would have stayed with the floor. How are either we or the CFC supposed to decide which of those two pictures is the right one? Well, is this a factual question? Does the record have to be expanded? What? Okay, so I think I can answer. There's a couple answers to that, and I promised you I'd get back to the standing issue. I think it is a factual determination. If you're only looking at the question of prejudice, the Bannum case explicitly says that for a motion for judgment on the administrative record, that's different than a typical motion for summary judgment because it requires the trier fact, in this case the court of federal claims, to reach a factual conclusion based on reading the record, and so that's exactly what the trial court did here. The trial court looked at the facts and the circumstances, and in the Alpha case, they talk about, this court said that in determining standing, you have to look at all the surrounding circumstances, and that's essentially what the trial court is doing. I mean, you have essentially a factual analysis in the trial court's decision where the trial court is going line by line for each of these merits arguments that they want standing to make, and saying the important point here that I also want to make was that for standing, the cases that talk about standing, there has to be some connection between the alleged error and the protester's reason for being excluded, and in this case, the only reason REV was excluded was because of its technical proposal because it was at a lower quality technical proposal. All of the errors that REV wants to allege now would have no bearing on its technical proposal. It's not going to improve its technical proposal. If you look at ... I'm sorry, but their argument, as I understand it, is it wouldn't change the result of their technical evaluation, but there was a substantial chance that it would change whether that was below or above a floor because the floor might have been changed. Well, the point I'm making here, if you look at Infotech, in Infotech, the protester asserted a challenge that if successful, would have allowed it to cure the deficiencies in its bid that caused it to be eliminated from consideration. In that case, discussions were had with the awardees that allowed the awardees to change things that if the protester had been allowed to change would have improved its proposal with respect to the issue that caused it to be eliminated from the competition. In the Labatt case, this court reversed the trial court because there was no connection between the alleged error and Labatt's failure to secure the contract. The court explained that without a showing of harm specific to the asserted error, there is no injury to redress and no standing to sue. So that's the second point that I'm making here. The first point is that the agency, over and over again, repeatedly said that the evaluation factor that it cared the most about was the technical value. They wanted the best offerors providing these services to veterans, and they explicitly reserved the right to accept less than seven. So yes, even if there were only three, which is the max that there, there's always gonna be three offerors that have better technical ratings than Rev, no matter if all of their challenges are accepted or not. But they also always said that Rev was acceptable even on the technical rating, and when they drew the floor at a higher level, at good, they knew how many were in the good range. And so the cure that Rev is saying, and they only have to show a substantial chance that this would cure their defect, is that had there not been nine, it's at least possible that the agency would have gone back to accepting what it had said was technically acceptable all along. Isn't there at least a reasonable chance that that reasoning is correct? And that's articulating the wrong standard. It's not, at least possible is not the standard. In data general, the court, no, the court distinguished between likelihood, and the court said a reasonable likelihood that the protester would have been awarded the contract, not just a reasonable possibility. So I have to push back on that. But also, it's speculative, because baked into that assumption is that these offerors that they're challenging are simply gonna be eliminated from the competition. Don't we, for standing analysis, have to assume the merits of their challenges to those six offerors? No, I mean, that goes to Judge Taranto's question about whether this is a fact determination based on an analysis of the facts and circumstances of the record. There is a little bit of ambiguity as to the standing issue, because I think there's a recent decision in CACI that talks about standing as no longer a jurisdictional question. So when you're talking about standing here, it's essentially a combined facts, fact, legal determination that the trial court made. Go ahead. Does it matter that the competitive range determination was based on a comparative analysis? Yes, Your Honor, in the sense that the agency compared the offerors, 33 offerors, and said in or out. The same competitive range determination, no longer considers the technical aspects of the offeror, but rather it's a comparative analysis of who's left. I don't think I agree with that, Your Honor. I mean, the agency made a competitive range determination, which the agency has broad discretion to make the competitive range. Does it make a difference whether it's comparative or relative determination? I think there's two ways to look at relative. They want the court to think a relative comparison means that Rev was ranked 10th or 11th. That's not the case. The comparative relative determination that the VA made was that Rev was more similar to 23 other acceptable offerors. So part of the other reason why this is speculative is that what happens to those 23 other offerors? Why does Rev necessarily become the only offeror that the agency is gonna look at? I think that's a merits issue that should be fought out in the Court of Federal Claims. Well, it was a merits decision, Your Honor. I mean, that's the point I'm making about the Bannum and the Labatt case that talk about the fact that... The Court of Federal Claims held, and I think this is why we're here, that they lacked standing to litigate their challenges to any of the other offerors ahead of them. Wasn't that the holding that's being appealed? That's right, Your Honor, but standing, whether or not in bid protests, in order to survive a protest to succeed, you had to show prejudicial error. So you can, and the Bannum case talks about that that could be analyzed on the front end or the back end, whether you're looking at standing for statutory standing purposes to determine whether someone can even raise an argument is something you would look at on the front end, or you would look at standing on the back end after you determine that there isn't, in fact, an error. If the court agreed that there was an error, the court would still have to answer this question of whether or not they had identified prejudicial error, and the standard is still the same. They have to show that there was a substantial chance. Are you saying we have fact findings on the merits here that we have to somehow give deference to, even though the holding that's being appealed is they didn't even have standing to litigate those questions? I'm saying that the court, I mean, the standard of review from Bannum is that for a finding of fact with respect to prejudice, that the standard of review is clear error. Is that what's in front of us, or do we only have the standing question in front of us? Well, the standing, that's what I'm saying. The standing question asks whether or not there's prejudice. They may be identical. Let me put it this way. If we think there's standing, you still win this appeal, or we have to send it back? Well, we would still win the appeal for all the reasons that we gave in the alternative in our brief, which is that on the merits, there's no substance to any of these remaining challenges. Assume otherwise. But either way, the standing question, they still have to show that they're, whether it's for, as a question of fact, or however you're defining standing, they have to show that their proposal, they would have an opportunity to improve their proposal with respect to the reason that they were eliminated. And the reason they were eliminated was because of the technical proposal being at a lower tier than the awardees. Okay, that's a good point to end. Let's hear from the other side now. Thank you, Your Honor. Thank you. Just to make sure we're all on the same page about the legal standard, I had a reference to the Data General case. This court had said in 1996 in Statistica, this is 102 F. 3rd at 1582, Data General did not, as it could not, replace the substantial chance standard with a more demanding one. We're under a substantial chance standard, not a likelihood standard. And what about, do we have to think about reasonable prejudice and whether it's the same thing as on the merits, the prejudice argument the government's making now? Does that have implications for what we do in this case? It really comes after the merits have been determined because at the outset, you're assuming success on the merits and saying, are you an interested party, do you have statutory standing? And then the prejudice analysis generally says, okay, we've considered the merits and whether we rule for you or not, then depending on what we did there. Well, I'm sorry, why does it have to be in that sequence? I certainly think, and I couldn't give you a citation now, but I'm certainly pretty certain that there are cases in which a court, this court, other courts say, we don't need to get to the merits of the question because it's perfectly clear. I'd say under the APA, because it's perfectly clear that if there was error, there's no prejudice. Why could that not be decided first? Well, that would be the stand, I mean, they could say that would be the same thing as the first step, standing analysis. So that could be decided first, but you shouldn't, you adapt this. So one way to understand, I think, what Mr. Singley was arguing is that perhaps that the court of federal claims within the proper procedural context that was presented actually made factual findings of no prejudice, even if you were right about the conflict of interest and the other things. And even if all six would go, I don't think actually CSC said, it said individually as the three challenges, but not collectively. Right, so yeah, there are two big problems there, right? It looks at them individually, and then what it actually says is it says you haven't shown that you would have changed, right? It's applying a would have changed standard that this court has repeatedly rejected, and then says that stating that proposal was either next in line for admission to the competitive range or the second company in line is insufficient, and then it relies on Wisconsin positions. So there's no factual finding from the court of federal claims to which you can defer to, because it's sort of making a double error in the legal standard it's finding. Where it comes closer to a factual finding is on Appendix 21, where it says, quote, plaintiff's proposal was effectively the 10th or 11th highest rated proposal. And Appendix 9061, you see the agency itself when it's doing this analysis, treating us and Offeror 36 as in this class of our own, up ahead. Does it make a difference that the competitive range determination or comparative determination as opposed to relative? Does that come into play? No, I mean, I think they end up being the same here in terms of it's looking at them and saying, when compared to other offers, it's making sure it has that sufficient number, and then it's drawing the line. So the merits, if it's remanded, the merits would be judged on, or determined on the same criteria that it's already been through? Well, there's never been an analysis of the merits here. We got cut off at the threshold by the Court of Federal Claims. It never decided. It explicitly says, I'm deciding this as a matter of statutory standing at the threshold, even assuming you succeed on every claim, and it shows you haven't shown you would have changed the outcome, which is the wrong legal standard being applied here. So any way you slice this, there's nothing to which you can defer to factually in that decision there. Thank you, Your Honor. Thank you very much, we've heard it.